IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| JOAN C. DAUGHETY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CBD 04-2114 |
| ) | |
| FRANCIS J. HARVEY, ) | |
| SECRETARY OF THE ARMY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION
DENYING DEFENDANT'S MOTION FOR RECONSIDERATION**

On March 20, 2006, the Court granted in part Defendant's Motion for Summary Judgment dismissing all but two claims against Defendant. Defendant now asks the Court to reconsider its findings as to Plaintiff's claims of retaliation (Count I) and failure to promote based on retaliation (Count V). The Court has reviewed Defendant's Motion for Reconsideration ("Defendant's Motion")(Docket Item No. 65) and the memoranda related thereto. No hearing is deemed necessary. Local Rule 105.6 (D. Md.). The Court hereby DENIES Defendant's Motion.

**I.    The Court Continues to Subscribe to its Position Regarding Plaintiff's Retaliation Claims Due to Progressive Discipline.**

Defendant suggests that the Court should not rely on the unpublished opinion of Nye v. Roberts, 145 Fed. Appx. 1, (4th Cir. 2005). While the Court agrees it is not bound by an unpublished opinion, the Court can, and does, find its reasoning instructive.

1

Defendant notes that under <u>Von Gunten v. Maryland</u>, 243 F.3d 858 (4th Cir. 2001), "poor performance review is generally not an adverse employment action sufficient to invoke the protections of Title VII."  While Defendant's position is technically correct, the term "generally" has its limitations.  The <u>Von Gunten</u> Court quoted the opinion of <u>Spears v. Missouri Dep't of Corr. and Human Res.</u>, 210 F.3d 850 (8th Cir. 2000) for the nascent notion that an "unfavorable evaluation" was an adverse employment action when used as a "basis to detrimentally alter the terms or conditions of the recipient's employment."  In explaining its earlier decisions, the Fourth Circuit in <u>Von Gunten</u> made clear that "hiring, granting leave, discharging, promoting, and compensating" was not an exhaustive listing of what constitutes an ultimate employment decision.  "Undoubtedly, a retaliatory downgrade of a performance evaluation could effect a term, condition or benefit of employment."  <u>Von Gunten</u>, at 867 (citations omitted).  However, the Court found that even in the light most favorable to the plaintiff, the facts unequivocally demonstrated that a negative performance evaluation did not have such an effect upon her conditions of employment.  The old and new evaluation forms used by her employer presented a conflict in nomenclature.  The old form directed the plaintiff's work evaluation to be classified as one that "needs improvement," while the latter directed a classification of her work as being "overall unsatisfactory."

Terminology aside, there were no practical consequences to Von Gunten due to the change in the classification scheme and its resulting unfavorable evaluation.  Von Gunten still received her pay raise as a recognition that the new evaluation forms were not entirely representative of her performance.  The terms, conditions, and benefits of employment were not jeopardized.  Accordingly the Court had no doubt that under these facts, the negative evaluation

2

caused no harm. The Court's reasoning, however, embraced the possibility that a retaliatory evaluation could be actionable if it affected a term, condition or benefit of employment.

Defendant next relies upon Newman v. Giant Food, Inc., 187 F. Supp. 2d 524 (D. Md. 2002) for the position that a "verbal warning and counseling letter did not constitute an adverse action." A more complete statement is that "such discipline, without evidence that the warning could lead to further disciplinary action, such as termination, does not constitute an adverse employment action." Id. at 528-29. The Court also relied in part on the lower court reasoning from Nye for the position that if a reprimand is joined with the language of termination, demotion, or diminution in pay, then such warnings could be actionable. This type of evidence was not presented by Newman and therefore summary judgment was appropriate.

Defendant also relies upon Jeffers v. Thompson, 264 F. Supp. 2d 314 (D. Md. 2003). In a case argued by present counsel to Judge Quarles, a number of employment concerns raised by Plaintiff were of no legal import. Interestingly, the Court stated that a reprimand "does not per se significantly affect the terms or conditions of employment." Id. at 330. "However, if evidence shows that a reprimand not only bruises an employee's ego or reputation, but also works a real, rather than speculative, employment injury, the reprimand becomes an adverse employment action." Id. (quoting Lewis v. Forest Pharm., Inc., 217 F. Supp. 2d 638, 648 (D. Md. 2002)). In Jeffers, the reprimand merely remained in the employee's file for two years. It was then removed with no resulting tangible employment action.

In the Lewis case, Judge Smalkin of this court made it clear that the placement of a reprimand in the employee's personnel file rendered her "ineligible for promotion to a position for which she was otherwise qualified." Lewis at 648. The letter of reprimand also stated that

"without immediate adjustment to your behavior, further disciplinary actions, including probation will result." The Court noted that "the threat of yet more tangible action is clear" and qualified as a tangible employment action.

In summary, this Court does not find the published controlling authority is contrary to, or inconsistent with, the unpublished decision in Nye. While employment discrimination law does not recognize every performance-related reprimand as actionable, a distillation of the cases above demonstrates something less than employer invulnerability. Von Gunten shows that a "retaliatory downgrade of a performance evaluation" can affect a term, condition or benefit of employment and therefore become actionable. Newman shows that performance-related warnings, coupled with evidence that further discipline could follow, might be actionable. Jeffers and Lewis make clear that a reprimand that works a real employment injury, such as job disqualification, is actionable. Each of these concerns are at issue in the present case. While the original language of this Court's opinion used the phrase "a different view" to demonstrate a less traveled path of liability, the case law set forth above hopefully brings more clarity to the Court's position.

    **II.**    **Defendant Is Not Entitled to Summary Judgment Under a Disparate Discipline Theory**.

Defendant contends that Plaintiff's failure to present evidence that "employees with comparable performance problems were treated more favorably . . . prevents her from demonstrating a prima facie case of disparate discipline. For this additional reason (also not addressed in the Court's opinion) Defendant is entitled to summary judgment on this claim." The Court disagrees.

Defendant relies on the concept that the Court should apply the elements of disparate discipline articulated in Cook v. CSX Transp. Corp., 988 F.2d 507 (4th Cir. 1993). Defendant's argument here about Plaintiff's failure to establish a disparate discipline claim does not vitiate the Court's analysis of Plaintiff's retaliation claim set forth above. Therefore, the Court did not find it relevant to set forth its denial of this prong of Defendant's Motion. For the record, the Court will very briefly discuss it here.

While this disparate discipline analysis was raised by Plaintiff and addressed by Defendant, the Court's denial of Defendant's motion for summary judgment was not based on discipline juxtaposed between Plaintiff and another employee. Here, the Court's reasoning was based upon a straight forward retaliation concern, cast in the light most favorable to the non-moving party. In a retaliation case, Plaintiff's prima facie evidence is not dependant upon the existence of a comparator who received preferential treatment. To the extent Plaintiff's suggestion of disparate discipline supported her claims for race-based wrongful termination, the Court has already ruled in Defendant's favor on such claims.

### III. The Court Does Not Find That Defendant Is Entitled to Summary Judgment on the Theory That Plaintiff Cannot Establish That She Was Meeting Her Employer's Legitimate Performance Expectations.

Defendant notes that even if "progressive discipline was deemed to be an adverse action, it was still entitled to summary judgment," and that the Court "overlooked" this argument. The Court disagrees.

There can be no dispute that Plaintiff was considered a well-performing employee prior to Ms. Sinclair receiving the detail she desired in September 2001. Only after a long history of

events were concerns raised about Plaintiff's work performance. These events included, <u>inter alia</u>:

1) Plaintiff becoming identified, in October 2001, as a supportive witness to a co-worker with interests adverse to the expected testimony to be offered by Commander Stewart and Ms. Sinclair in a workplace discrimination action;

2) Plaintiff's continued expression of dissatisfaction of Ms. Sinclair's non-competitive receipt of a detail of duties, which were extended without competition on at least two other occasions;

3) Plaintiff's filing of an EEO complaint against Commander Stewart and Ms. Sinclair in January 2002;

4) Plaintiff becoming approved as a discrimination witness with testimony expected to be adverse to Commander Stewart and Ms. Sinclair in April 2002.

It is on the heels of this activity, that in mid-May 2002, less than two weeks before Ms. Sinclair again receives a non-competitive placement, increase in rank and pay, that Ms. Sinclair's concerns about Plaintiff's job performance first surface in an expression of a "culpability" labeled negative performance evaluation. Prior to this "Letter of Warning" from Ms. Sinclair, there is no record evidence of negative work performance by Plaintiff at any time, including the seven months that Plaintiff worked under Ms. Sinclair's direction. A reasonable trier of fact could conclude that such a time line of events not only supports a causation concern, but also demonstrates that Plaintiff was meeting Defendant's legitimate performance

expectations. If such a position were adopted, then this "Letter of Warning" could be viewed as the torpedo that sank any hope of Plaintiff obtaining the deserved promotion.

> IV. **Plaintiff Is Not Required to Show Satisfactory Job Performance in Her Prima Facie Retaliation Case.**

Defendant erroneously suggests that Plaintiff must make a prima facie showing of satisfactory performance for cases of "discrimination or retaliation" based on discipline. Plaintiff is not being required to establish a case of discrimination. Plaintiff's claim remains in the context of retaliation. The prima facie elements of each are different. In the latter, Defendant's evidence of Plaintiff's poor job performance may be useful to demonstrate Defendant's legitimate non-discriminatory reason for termination under the McDonnell Douglas framework, leaving Plaintiff with the burden of showing that the real reason for her termination was retaliation. See Karpel v. Inova Health Sys. Serv., 134 F.3d 1222, 1228 (4th Cir. 1998), and Ross v. Communication Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985).

Defendant likewise misapplies the plain language of Baqir v. Principi, 434 F.3d 733 (4th Cir. 2006). It is true that Plaintiff must make a showing that she has satisfied the legitimate job expectations of her employer for any illegal discharge claims that may be asserted under either Title VII or the Age Discrimination in Employment Act ("ADEA") cases. In fact, satisfactory job performance is the third element for a prima facie case under a Title VII illegal discharge claim. However, no such requirement is superimposed upon a retaliation claim. If otherwise, the Court could have easily disposed of all of Baqir's claims on the basis of poor job performance. The Court elected to parse Baqir's illegal discharge claims and their requirement of satisfactory job performance from the analysis of the remaining claims, including his retaliation claim. Similarly, Warch v. Ohio Casualty Ins. Co., 435 F.3d 510 (4th Cir. 2006) is an

ADEA case, and clearly states that as an element of a claim, the employee must show that he was qualified for the job and met the employer's legitimate expectations.  The Court granted Defendant's Motion here as to the claims suggesting an illegal discharge.  Plaintiff's retaliation claims sounding in a "failure to promote" theory have survived Defendant's Motion since job performance is not part of Plaintiff's prima facie case.

Defendant has presented evidence through its letters of reprimand that its expectations were not being met.  The letters of reprimand provided definition to specific expectations of the employer as well as evidence that Plaintiff was not meeting them.  Plaintiff is still free to present evidence to suggest that Defendant's offered reasons were merely pretext for discriminatory action in retaliation.  The Court's Order of March 20, 2006, previously addressed Plaintiff's proof on the issue of pretext.

**V.     Conclusion.**

For the foregoing reasons, Defendant's Motion for Reconsideration of this Court's Order of March 20, 2006, is DENIED.  A separate Order will follow.


Date: June 14, 2006                                                /s/
                                                        Charles B. Day
                                                        United States Magistrate Judge